**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| US WORLDMEDS, LLC, | |
| Plaintiff, | |
| v. | Electronically Filed |
| | CASE NO.:  3:18-cv-535-CRS |
| ARCH INSURANCE COMPANY, | |
| Defendant. | COMPLAINT FOR DECLARATORY JUDGMENT; BREACH OF CONTRACT; AND BAD FAITH |
| | JURY TRIAL DEMANDED |

Plaintiff US WorldMeds, LLC ("US WorldMeds") for its complaint against Defendant Arch Insurance Company ("Arch") alleges as follows:

## INTRODUCTION

1.      This is an insurance coverage action concerning Arch's obligations to US WorldMeds for defense and indemnity regarding certain United States government claims under a policy providing Directors, Officers, & Organization liability coverage.

2.      Arch has improperly denied most of its defense obligations under the policy, and, even for the limited subset of obligations for which Arch agreed to coverage under a reservation of rights, Arch has failed to provide any payment.

3.      Arch also has improperly denied most, if not all, of its indemnity coverage obligations, forcing US WorldMeds to have to settle the claims without coverage participation.

4.      The coverage positions taken by Arch have been unreasonable, as have the delays in acknowledging and providing the limited coverage Arch has allowed.  This conduct has unfairly and improperly placed Arch's own financial interests in minimizing and postponing payments under its policy ahead of US WorldMeds' rights and interests as a policyholder.  As a result, this action also seeks relief for Arch's bad faith.

## PARTIES

5.      US WorldMeds is a small, privately held specialty pharmaceutical company with approximately 230 employees, which currently markets five products and expects to launch several more products over the next two years.  US WorldMeds' current products include Apokyn, an FDA-approved therapy for the treatment of off-episodes in patients with Parkinson's disease, Myobloc, which is an analogue for Botox and is FDA-approved for the treatment of Cervical Dystonia, and Lucemyra (Lofexidine), which has just been approved as the first and only non-narcotic product to relieve the debilitating withdrawal symptoms associated with abrupt opioid discontinuation.

6.      US WorldMeds is, and has been at all relevant times, a limited liability corporation organized and existing under the laws of Delaware, having its principal place of business in Jefferson County, Louisville, Kentucky.

7.      US WorldMeds is informed and believes, and based thereon alleges, that Arch is, and has been at all relevant times, a corporation organized and existing

under the laws of Missouri, having its principal place of business in New York, New York,

located in New York County.  US WorldMeds also is informed and believes, and based

thereon alleges, that Arch is a commercial insurance company that does business throughout

the United States, including in Kentucky, and particularly in Jefferson County, Kentucky.

8.      US WorldMeds is informed and believes, and based thereupon alleges,

that at all pertinent times, Arch was doing business throughout Kentucky, including in

Louisville, and was issuing policies covering activities within Louisville, Kentucky.

## JUSDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this dispute pursuant to

28 U.S.C. § 1332 because complete diversity exists between the parties and the total amount

in controversy exceeds $75,000, exclusive of costs.

10.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(a).

## BACKGROUND FACTS

11.     US WorldMeds purchased a Private Company Management Liability &

Crime Insurance Policy, policy number PCD0039882-03, from Arch, with a policy period

from at least September 1, 2013 through September 1, 2015 (the "Policy.")   A copy of the

Policy is attached hereto as "Exhibit A," and is fully incorporated by reference herein.

12.     The Policy contains a "Directors, Officers, & Organization Liability

Coverage Part," with a $3,000,000 limit.  The Policy also contains an "Additional Defense

Costs Limit of Liability" endorsement that adds another $1,000,000 of defense costs

coverage.

13.     The Policy provides broad liability coverage for alleged Wrongful Acts by US WorldMeds and/or its executives.  Insuring Agreements B and C of the Directors, Officers, & Organization Liability Coverage Part, each provide:

B. Organization Reimbursement

The Insurer shall pay Loss on behalf of an Insured Organization that such Insured Organization has, to the extent permitted or required by law, indemnified the Insured Persons resulting from a Claim first made against the Insured Persons during the Policy Period or Extended Reporting Period, if applicable, for a Wrongful Act by the Insured Persons.

C. Organization Liability

The Insurer shall pay Loss on behalf of an Insured Organization resulting from a Claim first made against such Insured Organization during the Policy Period or Extended Reporting Period, if applicable, for a Wrongful Act by an Insured Organization.

14.     The Policy defines "Wrongful Act" broadly as:

any actual or alleged:

1.  act, error, omission, misstatement, misleading statement, neglect or breach of duty by Insured Persons in their capacity as such or in an Outside Capacity or, with respect to Insuring Agreement C, by any Insured Organization; or

2.  matter claimed against an Insured Person solely by reason of their serving in such capacity, including service in an Outside Capacity.

15.     The Policy contains a special "Crown Canopy" endorsement that expands the definition of a "Claim" under the Directors, Officers, & Organization Liability Coverage Part.  The endorsement defines a "Claim" very broadly, to include, among other things, any:

1.  written demand or notice for civil monetary damages or other civil non-monetary relief commenced by the Insured's receipt of such demand or notice;

…

4. formal civil, criminal, administrative, or regulatory proceeding commenced by the filing of a notice of charges or similar document, or by the entry of a formal order of investigation or similar document;

…

6. written request to an Insured to toll or waive the statute of limitations regarding a potential Claim as described in 1 and 2 above commenced by the Insured's receipt of such request;

16.    The Policy provides nearly the broadest possible defense and indemnity coverage for Claims, under the special "Crown Canopy" endorsement, which defines "Loss" as:

the amount that the Insureds are legally obligated to pay resulting from a Claim, including, without limitation, damages settlements, judgments, pre- and post-judgment interest, Defense Costs, and Investigative Costs.

Loss shall include punitive and exemplary damages and the multiple portion of any multiplied damage award where insurable by law.  The insurability of such damages shall be governed by the laws of any applicable jurisdiction that permits coverage of such damages.

Loss shall exclude any:

1. taxes, fines or penalties imposed by law.

2. [deleted]

3. matters that are uninsurable under the law pursuant to which this Policy shall be construed;

4. amount for which the Insureds are not financially liable or for which the claimants are without legal recourse to the Insureds; or

5. non-monetary relief.

17.    On or about February 6, 2014, US WorldMeds received a subpoena for the production of documents and records from the U.S. Department of Health and Human Services Office of the Inspector General ("HHS OIG"), indicating that the government had

commenced an investigation.  The subpoena sought extensive information regarding the marketing and distribution of two of US WorldMeds' products: Myobloc and Apokyn. Among other things, the subpoena ordered that US WorldMeds appear before an officer of the OIG "in connection with an investigation into possible false or otherwise improper claims submitted under Title XVIII (Medicare) and Title XIX (Medicaid) of the Social Security Act."

18.     US WorldMeds promptly had its broker tender the subpoena to Arch for coverage under the Policy.  Arch, however, refused to acknowledge any defense or indemnity coverage obligations.  On or about March 31, 2014, Arch denied coverage by taking the (incorrect) position that "[t]he OIG Subpoena is not a Claim."  Instead, Arch responded that it would treat the tender solely as "notice of a potential Claim" and that "Arch is continuing to operate under a full reservation of all of its rights, remedies and defenses under the Arch Policy…"

19.     With Arch having refused coverage for the government investigation, US WorldMeds arranged for, and proceeded with, its own defense.

20.     As part of the on-going government investigation, on or about March 18, 2016, US WorldMeds received a Civil Investigative Demand ("CID") from the U.S. Department of Justice.  The CID stated that the government was "in the course of a False Claims Act investigation" and cited allegations that US WorldMeds had "caused the submission of false claims to federal health care programs by, *inter alia*, paying remuneration to physicians in violation the AntiKickback Statute, 42 U.S.C. § 1320a-7b."  The CID

required, among other things, further information beyond what had been provided for the subpoena.

      21.    On November 16, 2017, the government forwarded three tolling agreements, for US WorldMeds and for two of its insured indemnified executives, pertaining to the investigation (the "Tolling Agreements").  The Tolling Agreements stated, among other things, that the government "may have certain civil causes of action and administrative claims" against these three Insureds "arising from the provision of remuneration, directly and indirectly, to patients and health care providers to induce prescriptions of Apokyn and Myobloc in violation of the Anti-Kickback Statute and False Claims Act."  The Tolling Agreements were intended to allow time for settlement discussions with the government to potentially resolve the claims.

      22.    On or about March 30, 2018, Arch sent a letter to US WorldMeds' broker stating that, based on the Tolling Agreements, Arch would agree to provide defense coverage for the two Insured executives under Insuring Agreement B, subject to an alleged reservation of rights.  Arch incorrectly limited defense coverage to the time period from November 16, 2017 forward, still contending that until that point there was no "Claim."

      23.    Arch also continued to deny coverage for US WorldMeds as an entity, this time principally relying (again, incorrectly) on an anti-trust exclusion, and allegedly reserving rights as to various other inapplicable coverage defenses.

      24.    This Complaint will refer to the subpoena, the CID, the Tolling Agreements, the associated investigation by the government, and all related communications and other actions taken by the government as the "FCA Claim."

25.     With a potentially limited horizon for settlement of the FCA Claim, and the pressing need for Arch to meet its coverage obligations, US WorldMeds was forced to retain coverage counsel, who on June 14, 2018 responded to Arch's improper coverage positions – dating back to the original improper denial of defense coverage for the subpoena. As of the date of this Complaint, Arch has provided no substantive response.

26.      On August 6, 2018, US WorldMeds entered a settlement in principle with the government, resolving the FCA Claim with respect to itself and the other Insureds (the "FCA Settlement.")  While Arch had agreed in advance that it would not raise a coverage defense on the ground that US WorldMeds had failed to obtain Arch's consent to the settlement, Arch still continues to refuse to acknowledge any coverage obligation for US WorldMeds, or to agree that it would fund any portion of any settlement.  In short, US WorldMeds has been forced to settle the FCA Claim solely with its own money, and, now, has been forced to file this lawsuit to obtain the money US WorldMeds is owed and entitled to under its Policy.

27.     At all times relevant to this action, all conditions and prerequisites have been satisfied for coverage under the Policy for the FCA Claim with respect to both US WorldMeds and the indemnified executives.

## COUNT I

### *Declaratory Judgment*

28.     US WorldMeds reiterates and adopts each and every allegation set forth in Paragraphs 1 through 27 above, the same as if set forth fully herein.

29.     A controversy has arisen between US WorldMeds and Arch concerning the existence and extent of coverage under the Policy for the defense and settlement of the FCA Claim, with respect to US WorldMeds and the indemnified executives.

30.     US WorldMeds contends that Arch must provide defense coverage for US WorldMeds and for the indemnified executives for the entire FCA Claim.  US WorldMeds also contends that Arch must provide coverage for the FCA Settlement, up to the remaining policy limits.

31.     On information and belief, Arch contends that it has no coverage obligations for US WorldMeds and only a limited defense coverage obligation for the indemnified executives.  Indeed, despite multiple requests, Arch has thus far refused to provide any defense coverage for US WorldMeds and any indemnity coverage whatsoever.

32.      US WorldMeds seeks a declaration of its rights to defense and indemnity coverage under the Policy for the FCA Claim, establishing Arch's obligation to reimburse past defense costs and pay any further defense costs and the FCA Settlement, up to Arch's applicable policy limits.

## COUNT II

### *Breach of Contract*

33.     US WorldMeds reiterates and adopts each and every allegation set forth in Paragraphs 1 through 32 above, the same as if set forth fully herein.

34.     Since being tendered the FCA Claim, Arch has refused or failed to perform its obligations under the Policy, and specifically, has failed to provide defense coverage or coverage for the FCA Settlement.  To date, US WorldMeds has not received a penny of coverage from Arch for the FCA Claim.

35.     Meanwhile, US WorldMeds has incurred millions of dollars in defense costs for itself and the indemnified executives, and, now, has also incurred the legal obligation to pay the FCA Settlement.

36.     As a direct and proximate result of Arch's breach of its obligations under the Policy with respect to the FCA Claim, US WorldMeds has suffered, and continues to suffer, substantial damages.

37.     Arch is indebted to US WorldMeds for all attorneys' fees, expenses and costs incurred by or on behalf of US WorldMeds in their complete legal defense of the FCA Claim, as well as interest dating back to the time of the breaches.

## COUNT III

### *Bad Faith (Common Law and Statutory)*

38.     US WorldMeds reiterates and adopts each and every allegation set forth in Paragraphs 1 through 37 above, the same as if set forth fully herein.

39.     At all relevant times, Arch lacked a reasonable basis for denying or otherwise failing to fulfill its coverage obligations for the FCA Claim.

40.     To start, Arch knew that the Policy broadly provided defense coverage for the FCA Claim, beginning with the subpoena.  US WorldMeds had even further broadened the already substantial defense coverage, by purchasing the additional "Crown Canopy" endorsement.  Arch knew that under prevailing law, the subpoena would, at a minimum, constitute "a written demand or notice for … other civil non-monetary relief."

41.     Arch also knows that the anti-trust exclusion does not apply to the FCA Claim to bar coverage for US WorldMeds, and that such a reading of the exclusion is unreasonable and unjustified.

10

42.    On information and belief, Arch has engaged in similar conduct applying an overly aggressive and overbroad interpretation of the anti-trust exclusion in an attempt to deny coverage for other policyholders for claims that are not anti-trust claims. Such institutional pattern of practice seeking to improperly discount or avoid coverage obligations is itself additionally punishable as bad faith.

43.    On information and belief, Arch also understood that US WorldMeds, as a small company trying to raise capital for its new drug initiatives, needed the coverage provided by the Policy for defense and indemnity without delay and without having to hire coverage counsel to enforce the obvious coverage obligations.

44.    On information and belief, Arch improperly denied defense coverage at a time when it understood that US WorldMeds would be hard pressed to fight back and sue for coverage, and thereby Arch leveraged those circumstances to avoid and delay its coverage obligations.

45.    Based on the above, US WorldMeds is informed and believed, and upon that basis alleges, that Arch has unreasonably, improperly and in bad faith failed to properly evaluate, investigate and provide coverage for the FCA Claim, with the willful purpose and intent of delaying, and if possible ultimately avoiding, coverage for the FCA Claim that should be owed under the Policy.

46.    By virtue of the wrongs complained of herein, Arch is liable for both common law bad faith and has failed to comply with the good faith claims-handling requirements of the Kentucky Unfair Claims Settlement Practices Act, KRS § 304.12-230 *et seq*.

47.     As a direct and proximate result of these wrongs, US WorldMeds has suffered additional damages in an amount to be determined at trial, including its attorneys' fees bringing this action.

**PRAYER**

WHEREFORE, US WorldMeds respectfully requests judgment as follows:

1.   For a declaration that Arch was and continues to be obligated to provide complete defense coverage for the FCA Claim up to the Policy limits;

2.   For a declaration that Arch is obligated to provide coverage for the FCA Settlement up to the Policy limits;

3.   For a declaration that Arch breached its coverage obligation for the defense of the FCA Claim;

4.   For all of the defense costs paid by US WorldMeds to date, together with interest thereon running from the date they were incurred, in connection with the FCA Claim;

5.   For a declaration that Arch has acted in bad faith with respect to its coverage obligation for the FCA Claim;

6.   For US WorldMeds' costs, attorneys' fees and other reasonable and necessary expenses incurred in connection with this action;

7.   For prejudgment and post-judgment interest at the maximum legal rate;

8.   For any and all other proper relief to which US WorldMeds is otherwise entitled.

9.   US WorldMeds hereby demands a trial by jury for all issues so triable.

Date: August 8, 2018                    Respectfully submitted,


                                        _____/Amy B. Berge/_____
                                        Amy B. Berge
                                        Elizabeth S. Gray
                                        MIDDLETON REUTLINGER
                                        401 S. Fourth Street
                                        Suite 2600
                                        Louisville, Kentucky 40202
                                        (502) 584-1135
                                        aberge@middletonlaw.com
                                        egray@middletonlaw.com

                                        -and-

                                        Marc D. Halpern
                                        Abelson Herron Halpern LLP
                                        600 West Broadway, Suite 1060
                                        San Diego, CA  92101
                                        (619) 618-7000 - Main Number
                                        (619) 618-7001 - Facsimile
                                        (619) 618-7002 - Direct
                                        mhalpern@abelsonherron.com
                                        *To be Admitted Pro Hac Vice*

                                        ATTORNEYS FOR PLAINTIFF
                                        US WorldMeds, LLC